## Cates et al. v. Cates et al.

January 26, 1951.

William J. Baxter, Judge.

Wiggins & Wiggins for appellants.

Carl Eversole for appellees.

JUDGE SIMS—Affirming.

This action involves the custody of a child, Roscoe Cates, born in September, 1942. The chancellor refused the claim of each of his divorced parents and awarded custody of Roscoe to his maternal grandfather, Roscoe Abrams, during the school year and put the child in the custody of his paternal grandmother, Mrs. Eliza Cates, during the summer vacation, week-ends and holidays. The judgment provided the child's father and Mrs. Eliza Cates have the right of visitation while the boy is with Mr. Abrams. The mother accepted the judgment but the father appealed.

Roscoe's parents were married in December 1941,

separated in June 1942, and the day after he was born his father entered the army. The evidence is conflicting as to whether the father voluntarily made an allotment of his army pay for the support of his child and its mother, but during the thirty months he was in the service the mother received an allotment of $50 to $75 per month for the support of herself and baby.

Cates filed suit for divorce in 1944, charging his wife with abandonment, cruel and inhuman treatment and adultery. By answer and counter-claim she denied his accusations and charged him with cruel and inhuman treatment and habitual drunkenness. Each asked the custody of the child, averring the other was an unfit person to rear the boy. The judgment recites ''each are hereby divorced from each other,'' and placed the boy, who was then four years of age, in the joint custody of his parents ''for periods of thirty days alternating.'' Subsequently, each parent moved to Dayton, Ohio, married another spouse and now resides there. Cates has a regular position in the mechanical department of a large corporation earning $250 a month and has no children by his second marriage. Mrs. Cates' present husband, Pitts, was divorced but had no children during his first marriage, but he and appellee have a baby about five months old. Pitts is an automobile mechanic earning between $250 and $300 per month.

Cates moved the chancellor to modify the judgment in the divorce action and to give him custody of Roscoe. Mrs. Pitts and her father filed a joint response to the motion asking that she be given custody of her son, or if that were not done, then the custody of the child should be granted to her father.

Mrs. Pitts admits she gave birth to an illegitimate son in her father's home while her husband was overseas in the army, but she declined on the witness stand to divulge the name of the child's father. There were rumors that Cates denied the paternity of Roscoe but it was never proven that he made such statements, and he testified that he never questioned being the father of Roscoe. However, his former wife, Mrs. Pitts, when asked on the stand if Cates was the father of Roscoe, refused to answer the question. When interrogated further and asked if she had any doubt of Cates being Roscoe's father, she replied, ''I'm not saying.'' We feel this

was the answer of a scheming and calculating woman who thought to weaken Cates' claim of custody to her son by implying he was not the boy's father. If we are mistaken, then it brands Mrs. Pitts as being the mother of two illegitimate children.

The present Mrs. Cates and Pitts, the present husband of the former Mrs. Cates, each testified they wanted Roscoe in their respective homes and would care for him. Pitts said his wife, before their marriage, told him of her indiscretion, and he has her illegitimate son in his home supporting him and plans to adopt the child.

The record shows Cates evidenced practically no interest in his son until he made this motion to obtain full custody of him. While overseas he wrote his wife a vulgar letter in which he used some unprintable words wherein he said he was through with her and was going to marry a girl "over here," and advised her to get another husband. He expressed no concern in the letter for Roscoe and did not say he wanted custody of the boy.

The maternal grandfather is a man of good character and habits, owns and resides on a small farm within a few hundred yards of a good school and Roscoe is named for him. He and his wife had the care of Roscoe until he was 4 years old and they have become devoted to the child. The Abrams now have three children in their home, two older and one younger than Roscoe, and there can be no doubt their home is a wholesome one. Roscoe is happy there and receives tender love and attention. The paternal grandmother, Mrs. Eliza Cates, is a widow who owns a large farm about two miles from the Abrams place, on which she resides with a grown son. The proof shows she is a splendid woman and that her house would be a good home for Roscoe. But there are no children there and it is a mile and a half from a school and he would have to travel some bad roads in attending school.

It is ever difficult for courts to determine who should have the custody of a child of tender years. Of course, the paramount consideration is the welfare of the child. While courts never like to deprive a mother of the custody of her child, and will only do so when it clearly appears she is an unfit person to have the custody

of a young child, we have no hesitancy in saying Mrs. Pitts is not a suitable person to have the custody of Roscoe. If given to her, Roscoe would be reared with an illegitimate brother which would likely prove embarrassing to him as he grows up. The father has shown indifference to his son, and the vulgar letter he wrote the child's mother, when considered in relation to the care and devotion Mr. and Mrs. Abrams have exhibited toward Roscoe for so many years, convinces us the chancellor's decision was correct.

The judgment is affirmed.